**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____  :
                                          :
ELOIS WILLIAMS,                           :       CIVIL ACTION
                    Plaintiff,            :
                                          :
          v.                              :       NO. 04-5738
                                          :
JO ANNE B. BARNHART,[1]                   :
COMMISSIONER OF SOCIAL SECURITY,          :
                    Defendant.            :
_____  :

ARNOLD C. RAPOPORT
United States Magistrate Judge

## REPORT AND RECOMMENDATION

          Plaintiff, Elois Williams ("Plaintiff"), brings this
action under 42 U.S.C. section 1383(c)(3), which incorporates 42
U.S.C. section 405(g) by reference, to review the final decision
of the Commissioner of Social Security ("Defendant"), denying her
claim for disability insurance benefits ("DIB") and supplemental
security income ("SSI") provided under Titles II and XVI of the
Social Security Act ("the Act").  42 U.S.C. §§ 401-433, 42 U.S.C.
§§ 1381-1383f.  Subject matter jurisdiction is based upon section
205(g) of the Act.  42 U.S.C. § 405(g).  Presently before this
Court are the parties' Cross-Motions for Summary Judgment.  For
the reasons that follow, it is recommended that the matter be
remanded for further proceedings.

---

          [1]Jo Anne B. Barnhart became the Commissioner for Social
Security effective November 14, 2001.  Under FED. R. CIV. P.
25(d)(1) and 42 U.S.C. section 405(g), Jo Anne B. Barnhart is
automatically substituted as the Defendant in this action.

I.     **PROCEDURAL HISTORY.**

Plaintiff protectively filed concurrent applications for DIB and SSI on April 5, 2001, alleging disability since November 27, 2000, due to left arm and wrist damage, back, shoulder and leg pain, and major depression with psychotic features. (R. 14, 86-88, 98.) The agency denied Plaintiff's claims. (R. 60-64.) A hearing was held before an Administrative Law Judge ("ALJ") on July 22, 2002, which was attended by Plaintiff's attorney and a board-certified orthopedic surgeon, who testified with the agreement of Plaintiff's counsel. (R. 14, 24-31.) On September 5, 2002, a second hearing was held at which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") appeared and testified. (R. 32-57.)

Having considered evidence of Plaintiff's impairments, on October 4, 2002, the ALJ issued a decision in which he found that Plaintiff's physical impairments were not severe, and that although her mental impairments are severe, she retains the residual functional capacity to perform unskilled, light work that is not stressful. (R. 21, Findings Nos. 3, 6.) The ALJ further found that the Plaintiff could perform her past relevant work as an Office Filing Clerk, or as a Packager, both of which the vocational expert testified are unskilled, light jobs with low stress. (Id., Finding No. 7.) Thus, the ALJ concluded that Plaintiff is not disabled. (Id., Finding No. 8.)

Plaintiff timely requested review of the ALJ's decision, which was denied by the Appeals Council on June 28, 2004.  (R. 4-6.)  Thus, the ALJ's decision became the final decision of the agency.  Plaintiff filed this civil action on December 10, 2004, seeking judicial review of the Commissioner's decision that she was able to perform her past relevant work and thus was not entitled to SSI or DIB.  The matter was referred to this Magistrate Judge for preparation of a report and recommendation on May 13, 2005.

## II.    FACTS.[2]

Plaintiff was forty-seven years old at the time the ALJ issued his decision, (R. 15) making her a "younger individual" under the Commissioner's regulation.  See 20 C.F.R. § 416.963(b) (2001).[3]  Plaintiff has an eleventh grade education and has a work history as a packager, nurse's assistant, filing clerk, and factory worker.  (R. 15.)  Plaintiff last worked in November, 2000.  (R. 36.)

Plaintiff was admitted to Friends Hospital on March 22, 2001, with complaints of worsening depression, suicidal ideation,

---

[2]As noted by Defendant, Plaintiff does not dispute the ALJ's findings with regard to her physical impairments.  Thus, the ALJ's findings regarding Plaintiff's mental impairments will only be addressed in this Report and Recommendation.

[3]As a "younger individual," Plaintiff's age is not considered a significant impediment to adapting to new work situations.  See 20 C.F.R. § 416.963(b) (2000).

3

auditory hallucinations, and, after arguing with her children,
had thoughts of hurting them.  (R. 47, 145.)  Plaintiff exhibited
a depressed mood, auditory hallucinations, and appropriate affect
upon admission.  Plaintiff alleged that she had been hearing the
voice of her mother who passed away in 1992 telling her to join
her in death.  (R. 145.)  She was discharged six days later, on
March 28, 2001, with a diagnosis of major depressive disorder
with psychotic features, polysubstance abuse, and a GAF of 50
upon discharge.  (R. 146.)  Her prescribed medications upon
discharge were Prozac,[4] Trazodone,[5] and Risperdal, and she was
advised to follow-up at Northeast Community Mental Health
Center.[6]  (R. 145-146.)

> Plaintiff was re-admitted to Friends Hospital in May,

---

[4]Prozac is indicated for the treatment of major depressive
disorder.  A major depressive episode (DSM-IV) implies a
prominent and relatively persistent (nearly every day for at
least two weeks) depressed or dysphoric mood that usually
interferes with daily functioning, and includes at least 5 of the
following 9 symptoms: depressed mood, loss of interest in usual
activities, significant change in weight and/or appetite,
insomnia or hypersomnia, psychomotor agitation or retardation,
increased fatigue, feelings of guilt or worthlessness, lowed
thinking or impaired concentration, a suicide attempt or suicidal
ideation.  Physician's Desk Reference, 59th Edition, 2005, pp.
1873-1874.

[5]Trazadone is indicated for treatment of depression.  Common
side effects include lethargy and drowsiness.  Physician's Desk
Reference Electronic Edition (2004).

[6]Risperdal is a psychotropic agent indicated for the
treatment of schizophrenia.  Physician's Desk Reference, 59th
Edition, 2005, pp. 1742-1743.

2001 for depression and anxiety.  She was discharged to outpatient treatment with a diagnosis of major depression and post traumatic stress disorder, with a GAF of 60.[7]  (R. 160, 161.)

A medical report from the Nelson Medical Group, where Plaintiff received physical therapy for her arm injury, states that Plaintiff did not demonstrate difficulties performing activities of daily living, did not demonstrate difficulties with social functioning, and did not demonstrate difficulties with concentration, persistence, or pace.  (R. 192.)

Plaintiff reported to the Partial Hospitalization Program at the Northeast Community Mental Health Center on September 13, 2001 with complaints of severe depression and auditory hallucinations.  It was noted that she had a fourteen-year history of cocaine and alcohol abuse, 1995 counseling on a drug and alcohol program, and a 1980 hospitalization for attempted suicide following the crib death of her son.  (R. 268.) Plaintiff also has a history of physical and sexual abuse at age 11 for which she never received treatment.  (R. 269.) Plaintiff's affect was described as flat and her mood was

_____

[7]The GAF scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  A GAF in the 51 to 60 range indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)("DSM-IV").

dysthymic.  (Id.)  She was psychiatrically evaluated by Larry
Fryer, M.D. on September 13, 2001.  (R. 270-271.)  Dr. Fryer
described Plaintiff as anxious, tangential and somewhat agitated.
Dr. Fryer's diagnosis was schizoaffective disorder.[8]  (R. 271.)
Plaintiff's GAF was assessed at 40.  Dr. Fryer prescribed
Depakote and Neurontin, and recommended Plaintiff's attendance in
the partial hospitalization program.  (Id.)

        The record contains numerous progress notes from the
Partial Hospitalization program.  Plaintiff was described as
having a depressed mood with blunt affect on October 12, 2001,
she participated in a group discussing depression, and her
insight and judgment were described as limited.  (R. 344.)  On
October 18, 2001, Plaintiff attended group therapy and had poor
group interaction.  Her mood was depressed with blunt affect.
Plaintiff was described as having limited coping skills.  (R.
347.)  Plaintiff was also seen in psychiatric follow-up on
October 18, 2001.  Her medications were renewed for Neurontin,
Prozac, Risperdal, Effexor, Depakote and Trazadone.  (R. 333,
346.)  On October 21, 2001, Plaintiff's treatment plan indicates
that she was diagnosed with schizoaffective disorder with a GAF
of 45.  The treatment goals for Plaintiff were to adjust to the

_____

        [8]Schizoaffective disorder is defined as an uninterrupted
period of illness during which at some time there is either a
major depressive episode or a mixed episode of depression and
mania concurrent with symptoms which meet the criteria of
schizophrenia.  DSM-IV at 320.

6

day program, decrease her mood swings and lower her depression
levels.  (R. 336.)

     Plaintiff presented with a depressed mood and blunt
effect on October 24, 2001, her insight and judgment were
limited, and her peer interaction and eye contact were minimal.
(R. 350.)  On October 30, 2001, Plaintiff was depressed with a
flat affect, and according to the therapist, she did not
participate well in group therapy.  (R. 352.)  Plaintiff's mood
was also depressed and her affect blunted on both October 31 and
November 1, 2001.  (R. 353, 354.)  She participated in group
therapy addressing her abuse history on October 31, 2001.
Plaintiff also reported a desire to use drugs on November 1,
2001, and the group encouraged attendance at Narcotics Anonymous
that evening.  (R. 354.)

     On November 15, 2001, Plaintiff presented with a
depressed mood with a blunted affect, limited insight and
judgment, and minimally participated in group therapy and
exhibited minimal eye contact.  Her medication compliance
remained an issue.  (R. 355.)  On November 20 and 21, 2001, and
on December 5, 6, 7, 11, and 12, and throughout the remainder of
December, 2001, Plaintiff remained depressed with blunt affect.
(R. 356, 358-362.)  On November 21, 2001, Plaintiff admitted to
noncompliance with medication and suicidal ideation.  (R. 356.)
On November 21, 2001, Plaintiff participated in group therapy

7

regarding depression especially related to her perceived failure as a mother and she interacted well during an afternoon celebration. (R. 357.) On December 7, 2001, her coping skills and her peer interaction were improving, and on December 11, Plaintiff reported feeling well when she attended a "getting fit" group. (R. 360-361.) On December 7, 2001, Plaintiff was reassessed and her treatment team members noted that she continued to experience mood swings and depression, she had improved her compliance with her medications, but she continued to use drugs on occasion. (R. 338.) On December 18, 2001, Plaintiff was seen for psychiatric follow-up, complaining of depression, some of which could be attributed to seasonal affective disorder and chronic pain, her Effexor and Neurontin were increased, and her doctor recommended continuation with the program to avoid relapse and hospitalization. (R. 363.)

        Plaintiff's depression with a blunted or flat affect continued through January and February, 2002, and Plaintiff reported some urge to use drugs but reportedly also remained clean and sober. (R. 288-290, 308-312, 369-378, 379-383.) On January 17, 2002, Plaintiff's psychiatrist again noted poor compliance with medication, and he increased the Neurontin. (R. 371.) On February 9 and 12, 2002, Plaintiff was seen in psychiatric follow-up and re-evaluation. She indicated on February 9 that she felt overwhelmed because her kids graduated,

8

she had to move, her refrigerator broke, and her medications were
effective.  On February 12, she reported to Dr. Fryer an increase
in hallucinations and some depression.  He increased Risperdal
and ordered a check of her Depakote level.  (R. 287, 383.)
Plaintiff's updated treatment plan on February 28, 2002 showed
that Plaintiff made little or no progress and her GAF remained at
45.  (R. 340.)

        Plaintiff continued in the partial hospitalization
program through July, 2002, again with depressed mood and blunted
or flat affect.  Plaintiff's updated treatment plan dated April
25, 2002 indicated that she continued to make little or no
progress towards treatment goals and remained depressed.  (R.
341.)  Plaintiff was seen by Dr. Fryer on April 26 and May 23,
2002.  On April 26, he reported that Plaintiff had a low level of
compliance with her medications and medication renewals and a
blood test to obtain a Depakote level.  On May 23, 2002,
Plaintiff had never obtained the blood test and Dr. Fryer
indicated that he would begin supervision of her medication if
she did not obtain the blood test.  (R. 326, 384.)  On May 17,
2002, Plaintiff was seen for medication management by Minakshi
Chatterjee, M.D.  She reported that she had run out of medication
and had poor sleep.  Dr. Chatterjee increased her Trazadone.  (R.
283.)

        Plaintiff continued in the partial hospitalization

program through June and July, 2002, but she did not attend on
June 20 and 26 due to activities with her children.  (R. 395.)
Plaintiff continued to exhibit a depressed mood and an anxious or
depressed affect, and her coping skills, insight and judgment
were described as fair.  (R. 391-394, 396-402.)  Plaintiff's June
12, 2002 treatment plan indicated that DHS was involved with her
children and she made little progress since the previous review,
experiencing high levels of anxiety and depression with auditory
hallucinations.  In order to be discharged from the program, the
members of the treatment plan indicated that Plaintiff was
required to exhibit significant improvement in coping skills,
decrease levels of depression, ignore hallucinations, decrease
anxiety, and improve social skills.  (R. 342-343.)

        Plaintiff was scheduled to attend a consultative
examination on September 21, 2001, but she did not appear for
that examination.  (R. 240-252.)  Plaintiff testified at the
second administrative hearing that she stopped working in
November 2000 because it was a temporary position.  (R. 38.)  She
testified that she attended an outpatient drug treatment program
at the Northeast Community Mental Health Center in 2000.  (R.
48.)  She also testified that at the time of the September 2002
hearing, she was attending sessions at the Northeast Community
Mental Health Center four times per week where "[w]e talk about
our problems, and that's about it."  (R. 42.)  Plaintiff also

testified that at the time of the ALJ hearing in September 2002, she had not used drugs or alcohol for eleven months.  (R. 46.) She testified that when she is not at the program, "I usually don't do nothing.  I lay around and I sleep."  (Id.)  She also testified that her children perform all the household chores. (Id.)

A vocational expert testified at the ALJ hearing and classified Plaintiff's past relevant work as a file clerk as unskilled, low-stress light work.  (R. 52-53.)  She also testified that she had been attending a treatment program four times a week for six months before the ALJ hearing at Northeast Mental Health Center.  (R. 42.)  She stated that she attends various group therapy sessions for stress management, anxiety and survival at the Center, and also has individual therapy with her psychotherapist, Kurt Barnes.  (Id.)  Plaintiff also reported that she periodically sees a psychiatrist, Dr. Ferretti, who prescribes medication.  (R. 43).  Plaintiff also indicated that her treating mental health professionals have informed her that she needs to indefinitely continue with the program.  (R. 45.) At the time of her application for benefits, Plaintiff reported that her prescribed medications included Prozac, Trazadone (Desyrel), and Risperdal.  (R. 105.)

The vocational expert who testified at the ALJ hearing classified Plaintiff's past work as a packager as medium

11

unskilled work, her work as a file clerk as light, semi-skilled work, and her work as a cleaner as medium unskilled, low stress work.  (R. 52.)  Plaintiff's counsel asked the VE to credit Plaintiff's testimony that she is so depressed when she is not in a partial program that she lays around and is not able to function, the VE testified that she would not be able to maintain employment if she could not get up and go to her job.  (R. 54.)  The VE also testified that a person with GAF scores between 50 and 41 are described as serious symptoms and such a person would not be able to keep a job.  (R. 54-55.)

**III.     LEGAL STANDARD.**

         The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision.  Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971)(quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>see also</u> <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert.</u> <u>denied</u>, 113 S.Ct. 1294 (1993).  When determining whether the ALJ's decision is supported by substantial evidence, the

court may look to any evidence in the record, regardless of whether the ALJ cites to it in his decision.  Hook v. Bowen, 677 F. Supp. 305, 306 (M.D. Pa. 1988); Esposito v. Apfel, 2000 WL 218119, at *6 (E.D. Pa. Feb. 24, 2000).  Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. § 423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows:  (1) if the claimant is currently engaged in substantial gainful employment, []he will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," []he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether []he can perform work []he has done in the past despite the

13

> severe impairment - if []he can, []he will be
> found not disabled; and (5) if the claimant
> cannot perform [his] past work, the
> Commissioner will consider the claimant's
> RFC, age, education, and past work experience
> to determine whether []he can perform other
> work which exists in the national economy.
> *See id.* § 404.1520(b)-(f).

Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431-32

(3d Cir. 1999).

**IV.     ALJ DECISION AND PLAINTIFF'S SUMMARY JUDGMENT MOTION.**

Plaintiff's alleged impairments involve an inability to

work due to osteoarthritis, allied disorders, and anxiety and

related disorders.  (R. 14.)   The ALJ, however, proceeded through

the sequential evaluation process and found Plaintiff was not

disabled due to her impairments.[9]  In her Motion for Summary

Judgment, Plaintiff asserts that the ALJ failed to consider

relevant evidence in determining that Plaintiff does not meet or

equal the requirements of sections 12.03B and/or 12.03C of the

Listings of Impairments for schizophrenic, paranoid and other

---

[9]  The ALJ proceeded through the first four steps, finding
that: 1. Plaintiff has not been engaged in substantial gainful
activity since November 27, 2000; 2. Plaintiff's musculoskeletal
impairments are not severe, but her mental health impairments can
be considered severe impairments; 3. Plaintiff's impairments or
combination of impairments do not meet or equal the criteria of a
listed impairment in Appendix 1, Subpart P, Regulations No. 4;
and 4. Plaintiff has a residual functional capacity for light
work and can perform her past relevant work as Office File Clerk
or Packager.  (R. 21.)   Relying in part on the testimony of the
VE, the ALJ then determined that Plaintiff can perform light,
unskilled work, with low stress.  (R. 21.)   Thus, the ALJ
determined, at step five of the sequential evaluation process,
that Plaintiff is not disabled.  (R. 21.)

psychotic disorders, the ALJ failed to call a psychiatric medical expert, and the ALJ failed to properly evaluate Plaintiff's subjective complaints, including pain and inability to perform activities of daily living without assistance.  The sole issue before this Court, however, is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.  With regard to our review of Plaintiff's claims, the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearings were consulted.

Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that on the evidence presently before this Court, we cannot determine that Plaintiff is disabled, but neither can we find substantial evidence in support of the ALJ's decision that Plaintiff is not disabled.  A thorough inspection of the evidence fails to provide appropriate and adequate support for the ALJ's decision that Plaintiff can perform work that exists in significant numbers in the regional and national economy.  Accordingly, we conclude that the ALJ's decision was not supported by substantial evidence of record.  We will, therefore, recommend that the matter be remanded for further proceedings consistent with this Report and Recommendation.

**V.      DISCUSSION.**

We cannot find substantial evidence in support of the ALJ's decision that Plaintiff is not disabled in the information presently before this Court.  It is the opinion of this Court that Plaintiff's medical records, reported daily activities, and transcribed testimony at the administrative hearing warrant a psychological evaluation.  Plaintiff was scheduled for a consultative psychological examination on September 21, 2001, but she did not appear for that examination.  No follow-up or rescheduling of this psychological examination was done. The ALJ, in examining the Plaintiff's evidence with respect to her mental health treatment, held that Plaintiff's subjective complaints were not credible.  The ALJ stated the following:

> The final diagnoses on March 28, 2001, when the claimant was discharged, states: "Major Depressive Disorder with Psychotic Features, Recurrent Polysubstance Abuse."  Her GAF on discharge was "50" (Exhibit 9F).  The claimant has an extensive history of drug and/or alcohol abuse, and alleged at the hearing that she had not "had anything" since October, 2001, 11 months before her September hearing; however Dr. Watson, of Northeast Community Center Mental Health/Mental Retardation Partial Hospitalization Program, stated in his impression of the claimant on November 14, 2002 that she was "45 year old female with a history of chronic substance abuse and depression," for whom he recommended a "structured outpatient program" (Exhibit 4F).  The claimant alleged a complete inability to perform home chores because of depression and musculoskeletal pain; however, it appears that the claimant is able to attend to activities of daily living if she is so motivated.  The claimant apparently is ready at a certain time four

days a week to be picked up by the Center's
van to take her to treatment, and she attends
church every Sunday, according to her
testimony.  Any injuries incurred by the
claimant when she was assaulted in November,
2000 have resolved.  Records from the
Northeast Mental Health Center received post
hearing reflect that the claimant has long
been non-compliant with her medications and
the claimant's testimony at the hearing
supports this.  The Administrative Law Judge
is not persuaded that the claimant has any
physical impairments that are disabling, and
her mental health allegations are not seen as
preclusive of any and all work activity.  The
vocational expert has testified to the fact
that some of the claimant's past relevant
work was unskilled and is not stressful, and
the undersigned finds that the claimant has
the residual functional capacity to perform
those of her past relevant jobs that are
light, unskilled, and not stressful.

(R. 20.)  The record contains no psychological evaluation or

report.  It is the duty of the ALJ to order further testing where

necessary to clarify a claimant's medical condition, and testing

or evaluation for a psychological disorder should be carried out

on remand in this case.

We note that often an attorney's "supplemental"

hypothetical to the VE will preclude the attorney from

subsequently arguing that the ALJ's hypothetical was deficient

for failure to include those limitations proposed by the

attorney.  However, where the ALJ fails to discuss the merits of

the proposed additions to the hypothetical, the ALJ has erred.

The ALJ is required to provide some indication of the evidence

that was rejected in arriving at the decision and the reasons

therefore, so that a reviewing court can determine whether probative evidence was properly credited or simply ignored.  <u>See</u> <u>Cotter v. Harris</u>, 642 F. 2d 700, 705 (3d Cir. 1981).  That is, the ALJ has a duty to propose a hypothetical that reflects all of a claimant's impairments and discuss the reasons for rejecting the proposed additions to the hypothetical.  <u>Chrupcala v.</u> <u>Heckler</u>, 829 F.2d 1269, 1276 (3d cir. 1987)(citations omitted). In this case, Plaintiff's counsel proposed a hypothetical to the VE that included all of the limitations described by Plaintiff, including when she is not in her partial day hospitalization program, she gets so depressed that she lays around and is not able to function.   (R. 53-54.)  The VE responded to this hypothetical by stating that if Plaintiff was at that low level of functioning that she could not get up to go to her job, she would not be able to maintain employment.  (R. 54.)  The ALJ should have discussed this hypothetical in his decision.  Because the ALJ failed to discuss or adopt the hypothetical proposed by Plaintiff's counsel, the ALJ's decision is not based on substantial evidence.

**VI.     CONCLUSION.**

Based on the record before us, we cannot determine whether Plaintiff's combined impairments meet or equal a listed impairment or whether she is otherwise disabled.  Where the ALJ requires additional evidence to make a disability determination,

he should order a consultative examination to be performed at the expense of the Social Security Administration.  See 20 C.F.R § 404.157(a)(2003).  The ALJ should also gather new evidence from a vocational expert in light of the necessary clarifications to the record.[10]  In addition, Plaintiff should be afforded a reasonable opportunity to supplement the medical evidence to address the issues identified herein.  See Gachette v. Weinberger, 551 F.2d 39, 40-41 (3d Cir. 1977)(counsel "should be permitted to make an offer of proof regarding what a more fully developed record might have shown"); see also Stover v. Shalala, No. CIV.A. 94-1910, 1995 WL 327981, at *8 (E.D. Pa. May 31, 1995)(on remand, claimant was to "be given an opportunity at th[e] rehearing to submit additional relevant evidence").  Finally, Plaintiff should remain cognizant that the ultimate burden of proving continued disability rests with her.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this          day of June, 2005, it is

---

[10]   The Third Circuit has consistently held that because the VE provides opinion as to the claimant's residual functional capacity, the hypotheticals posed to a VE must accurately identify "all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)(citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984) and Wallace v. Sec'y, 722 F.2d 1150, 1155 (3d Cir. 1983)(stating the expert must have evaluated claimant's particular impairments as contained in the record)).

RESPECTFULLY RECOMMENDED that the Plaintiff's Motion for Summary Judgment should be DENIED, the Defendant's Motion for Summary Judgment should be DENIED, and the matter be REMANDED for further proceedings consistent with this Report and Recommendation.

BY THE COURT:

_____

ARNOLD C. RAPOPORT,
United States Magistrate Judge